# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SHARI L. JENSEN** and **JAREL J. JENSEN**, | CASE ID: _____ |
| Plaintiffs, | |
| v. | **COMPLAINT**<br>(Medical Malpractice/Professional Negligence and Loss of Consortium) |
| **NEBRASKA METHODIST HEALTH SYSTEM, INC.**, d/b/a Methodist Health System; **THE NEBRASKA METHODIST HOSPITAL**; **RADIOLOGIC CENTER, INC.**; and **NICK L. NELSON, M.D.** | |
| Defendants. | |

## ALLEGATIONS COMMON TO ALL COUNTS

Plaintiff Shari L. Jensen ("Ms. Jensen") and Plaintiff Jarel J. Jensen ("Mr. Jensen" and together with Ms. Jensen, "Plaintiffs"), for their respective common allegations and causes of action against the above-named defendants, state as follows:

## PRELIMINARY STATEMENT

1. This is a civil action arising out of health care services provided or not provided to Ms. Jensen for the time period commencing on or about October 12, 2021, and continuing therafter, by, individually and/or collectively, the following: (a) Defendant Nebraska Methodist Health System, Inc., a Nebraska non-profit corporation ("NMHS"); (b) Defendant The Nebraska Methodist Hospital, a Nebraska non-profit corporation ("TNMH"); (c) Defendant Radiologic Center, Inc., a Nebraska corporation ("RCI"); and (d) Defendant Nick L. Nelson, M.D. ("Dr. Nelson" and together with NMHS, TNMH and RCI, are each individually referred to herein as, a "Defendant" and collectively as, the "Defendants").

2. Plaintiffs seek recovery of all damages allowed by law, and specifically for the separate causes of action pled in more detail below.

3. Plaintiffs seek to recover damages for separate and distinct injuries to each of them including, but not limited to, personal injuries and damages, emotional distress and suffering, loss of consortium, and medical expenses.

## PARTIES

4. Ms. Jensen and Mr. Jensen are husband and wife, and are residents of Maricopa County, Arizona.

5. At all times relevant herein, NMHS was a Nebraska non-profit corporation operating its business under the registered trade name of "Methodist Health System" and that acted, in whole or in part, as a holding company for its affiliate corporations including, but not limited to, the following: (a) TNMH; (b) Methodist Women's Hospital; and (c) Methodist Physicians Clinic.

6. At all times relevant herein, NMHS published a website at https://bestcare.org.

7. At all times relevant herein, NMHS advertised Dr. Nelson as one of its health care providers specializing in diagnostic radiology.

8. NMHS provided health care-related services to its affiliates in various areas including, but not limited to, accounting, finance, billing,

collections, management engineering, planning, marketing, human resources, information technology and network development.

9. NMHS provided health care-related services to members of the general public including, but not limited to, Ms. Jensen.

10. At all times relevant herein, NMHS employed and/or engaged physicians, nurses, technicians, agents, apparent agents, ostensible agents, servants and/or other health care professionals (collectively, the "System Staff") to provide health care-related services including, but not limited to, promulgating and implementing policies and procedures at its affiliate organizations.

11. At all times relevant herein, the System Staff provided health care-related services to members of the general public including, but not limited to, Ms. Jensen.

12. As a matter of law, the negligent acts and/or omissions of the System Staff are imputed to NMHS and, therefore, NMHS is vicariously liable for all such negligent acts and/or omissions by the System Staff.

13. At all times relevant herein, TNMH was a Nebraska non-profit corporation, that was, in whole or in part, engaged in the business of owning and operating health care facilities including, but not limited to that certain hospital more commonly known as "Nebraska Methodist Hospital" located at 8303 Dodge Street, Omaha, Nebraska 68114 (the "Hospital"). TNMH provided health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Ms. Jensen.

14. At all times relevant herein, TNMH employed and/or engaged physicians, nurses, technicians, agents, apparent agents, ostensible agents, servants and/or other health care professionals (collectively, the "Hospital Staff") to provide health care services including, but not limited to, promulgating to and implementing policies and procedures. At all times relevant herein, the Hospital Staff provided health care services to members of the general public including, but not limited to, Ms. Jensen.

15. As a matter of law, the negligent acts and/or omissions of the Hospital Staff are imputed to TNMH and, therefore, TNMH is vicariously liable for all such negligent acts and/or omissions by the Hospital Staff.

16. At all times relevant herein, RCI was a Nebraska corporation, that was, in whole or in part, engaged in the business of owning and operating health care facilities.

17. At all times relevant herein, RCI employed and/or engaged physicians, nurses, technicians, agents, apparent agents, ostensible agents, servants and/or other health care professionals (collectively, the "RCI Staff") to provide health care goods and services on an inpatient and/or outpatient basis to members of the general public including, but not limited to, Ms. Jensen.

18. As a matter of law, the negligent acts and/or omissions of the RCI Staff are imputed to RCI and, therefore, RCI is vicariously liable for all such negligent acts and/or omissions by the RCI Staff.

19. At all times relevant herein, Dr. Nelson was a physician practicing medicine in the State of Nebraska, and he held himself out to be a skilled and competent physician.

20. At all times relevant herein, Dr. Nelson was an employee, agent, servant, director and/or ostensible or apparent agent of NMHS, TNMH and/or RCI, acting in the course and scope of his employment or other business relationship with NMHS, TNMH and/or RCI.

21. As a matter of law, the negligent acts and/or omissions of Dr. Nelson are imputed to NMHS, TNMH and/or RCI, and, therefore, NMHS, TNMH and/or RCI is vicariously liable for all such negligent acts and/or omissions.

22. Plaintiffs reserve the right to add other parties, causes of action, and additional claims for damages under the circumstances of this case.

## JURISDICTION

23. This Court has jurisdiction under 28. U.S.C. §1332.

24. As of the date hereof, Ms. Jensen and Mr. Jensen are citizens and residents of the State of Arizona.

25. As of the date hereof and upon information and belief, NMHS is a citizen of the State of Nebraska, its state of formation and its principal place of business.

26. As of the date hereof and upon information and belief, TNMH is a citizen of the State of Nebraska, its state of formation and its principal place of business.

27. As of the date hereof and upon information and belief, RCI is a citizen of the State of Nebraska, its state of formation and its principal place of business.

28. As of the date hereof and upon information and belief, Dr. Nelson is a citizen and resident of the State of Nebraska.

29. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

30. Venue lies in this Court as the negligent acts and/or omissions complained of herein occurred in Douglas County, Nebraska.

## NEBRASKA HOSPITAL-MEDICAL LIABILITY ACT

31. Plaintiffs assert that, at all times relevant herein, each of the Defendants failed to properly qualify for coverage under the Nebraska Hospital-Medical Liability Act, Neb. Rev. St. § 44-2801 et. seq. R.R.S. 1943, as amended (the "Act") and have failed to comply with the requirements of the Act. Plaintiffs demand strict proof that at all times relevant herein, any Defendant making such a claim, was covered by and in compliance with the Act.

32. Notwithstanding any filing by, or claim of any of the Defendants for the special benefits, privileges and protection of the Act, Plaintiffs allege that

the Act is unconstitutional in whole or in part because it violates the Seventh (7th) and Fourteenth (14th) Amendments to the Constitution of the United States, as well as the following provisions of the Constitution of the State of Nebraska: Article 1, §§ 1, 3, 6, 13, 16, 21, 25, 26; Article II, § 1; Article III, §18; Article V, § 2; Article VI, § 1 and Article XII, § 10(c).

33. Plaintiffs hereby affirmatively waive their right for a medical review panel to review their claims noted herein against the Defendants as provided by the Act and they elect to file this action directly in the District Court of Douglas County, Nebraska.

34. A copy of this Complaint is hereby served upon the Director of the State of Nebraska Department of Insurance, together with a copy upon the Attorney General of the State of Nebraska.

### STATEMENT OF FACTS

35. During the time period commencing on or about October 12, 2021, and continuing through November of 2023, NMHS and the System Staff provided or failed to provide health care services to Ms. Jensen relating to her condition, thereby establishing a health care provider-patient relationship between NMHS and Ms. Jensen.

36. During the time period commencing on or about October 12, 2021, and continuing through November of 2023, TNMH and the Hospital Staff provided or failed to provide health care services to Ms. Jensen relating to her condition, thereby establishing a hospital-patient relationship between TNMH and Ms. Jensen.

37. During the time period commencing on or about October 12, 2021, and continuing through November of 2023, RCI and the RCI Staff provided or failed to provide health care services to Ms. Jensen relating to her condition, thereby establishing a health care provider-patient relationship between RCI and Ms. Jensen.

38. During the time period commencing on or about October 12, 2021, Dr. Nelson provided or failed to provide health care services to Ms. Jensen

-7-

relating to her condition, thereby establishing a physician-patient relationship between Dr. Nelson and Ms. Jensen.

39. On October 12, 2021, Ms. Jensen presented to NMHS, TNMH, RCI and Dr. Nelson for an MRI Breast w & w/o Contrast Bilateral (the "MRI").

40. The documented reason for the MRI was "[I]nvasive breast cancer, stage I/II/III, initial workup."

41. The Defendants, and each of them, held themselves out as being compenent to interpret the MRI and report the findings.

42. Dr. Nelson was the diagnostic radiologist that read and interpreted the MRI on October 12, 2021.

43. Dr. Nelson's impression was "1. There is a focal mass in the central right breast correlating with the malignancy that was biopsied. No evidence for adenopathy. 2. There are several areas of nonmass enhancement in both breasts suggesting background enhancement. These all have benign washout curves. Consider follow-up breast MRI in 6-12 months."

44. Dr. Nelson did not identify or report the distinct signal abnormality representing a mass on the sternum which is clearly present on the MRI of October 12, 2021.

45. Dr. Nelson had a duty and responsibility to report any distinct signal abnormalities which were suspicious for metastatic lesions.

46. Dr. Nelson knew or should have known that Ms. Jensen's treating clinical doctors would determine the stage of her breast cancer based on Dr. Nelson's interpretation of the MRI findings.

47. Dr. Nelson knew or should have known that any clearly identifiable signal abnormality, such as the obvious mass on the sternum which is present on the MRI of October 12, 2021, should be reported.

48. Dr. Nelson did not report the clearly identifiable signal abnormality present on the sternum when reporting his findings from the MRI of October 12, 2021.

49. The Defendants, and each of them, held themselves out as being familiar with the tumor, node, and metastasis staging system so that they can convey the most pertinent findings to the treating clinical prfossessionals.

50. Reporting a breast MRI for breast cancer evaluation should provide a detailed description of imaging findings following the recongzied BI-RADS descriptors.

51. Dr. Nelson knew or should have known that key findings, such as a distinct signal abnormality representing a mass on the sternum, will alter a patient's treatment.

52. Based on Dr. Nelson's interpretation of the MRI, Ms. Jensen was staged as Stage I breast cancer.

53. Based on her staging, Ms. Jensen proceeded to have surgery and radiation for Stage I breast cancer.

54. Based on her staging, Ms. Jensen did not receive systemic chemotherapy for advanced stage breast cancer.

55. On or about November 13, 2023, Ms. Jensen had a CT scan performed which found the metastatic mass on the sternum.

56. On or about November 13, 2023, Ms. Jensen's treating medical oncologist, Timothy H. Dorius, M.D. ("Dr. Dorius"), informed her that upon his review of her prior scans, it was clear that Dr. Nelson had failed to identify the sternal mass on her MRI of October 12, 2021.

57. During an office visit on November 22, 2023, Dr. Dorius again informed Ms. Jensen that "the sternal mass was clearly present at the time of the initial cancer diagnosis and was not caught by the radiologist," Dr. Nelson, who interpreted the MRI back in 2021.

58. Dr. Dorius further stated that he had the imaging reviewed by radiologists on the "Tumor Board", which confirmed that the lesion was clearly present on the October 2021 MRI, and "should have been included in the original MRI interpretation as a suspicious lesion."

59. Prior to November of 2023, Ms. Jensen was not presented with any facts or information, which would have led to the discovery of Dr. Nelson's failure to identify the metastatic mass on Ms. Jensen's sternum and Ms. Jensen had no reason to suspect that Dr. Nelson had misinterpreted the MRI of October 12, 2021. Because the cause of action was not discovered and could not have been reasonably discovered within two-years of Dr. Nelson's professional negligence, Ms. Jensen may commence this action within one year from the date she discovered Dr. Nelson's professional negligence (*i.e.*, November of 2023).

60. Plaintiffs were also informed that due to Dr. Nelson's failure to identify the sternal mass on her MRI of October 12, 2021, Ms. Jensen had undergone the "wrong cancer treatments" for the past two years.

61. Plaintiffs were also informed that due to Dr. Nelson's failure to identify the sternal mass on her MRI of October 12, 2021, Ms. Jensen had not received the "proper cancer treatments" for the past two years.

62. As a direct and proximal result of Dr. Nelson's interpretation of the MRI and report, Ms. Jensen underwent the wrong cancer treatment for over two years.

63. As a direct and proximal result of Dr. Nelson's interpretation of the MRI and report, Ms. Jensen did not receive the correct cancer treatment for over two years.

64. As a direct and proximal result of Dr. Nelson's interpretation of the MRI and report, Ms. Jensen underwent multiple unnecessary surgical procedures.

65. As a direct and proximal result of Dr. Nelson's interpretation of the MRI and report, Ms. Jensen has experienced significant mental and emotional suffering and anguish.

66. As a direct and proximal result of Dr. Nelson's interpretation of the MRI and report, incorrect treatment was ordered and provided to Ms. Jensen during the time period from approximately October 12, 2021 to November of 2023.

67. The standard of care applicable to each of the Defendants is a national one.

### COUNT I – MEDICAL MALPRACTICE/ PROFESSIONAL NEGLIGENCE

For their Count I claim against NMHS, TNMH, RCI, and Dr. Nelson, Plaintiffs incorporate by reference Paragraphs 1 through 67 of the Allegations Common to All Counts and allege:

1. As a result of the health care provider-patient relationship between NMHS and Ms. Jensen, the System Staff owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

2. As a result of the hospital-patient relationship between TNMH and Ms. Jensen, the Hospital Staff owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

3. As a result of the health care provider-patient relationship between RCI and Ms. Jensen, the RCI Staff owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

4. As a result of the physician-patient relationship between Dr. Nelson and Ms. Jensen, Dr. Nelson owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians engaged in a similar practice.

5. NMHS, the System Staff, TNMH, the Hospital Staff, RCI, the RCI Staff, and Dr. Nelson breached their respective duties to Ms. Jensen to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice because, in one or more of the following ways, each of them:

 a. Failed to properly identify signal abnormalities on the MRI of October 12, 2021;

 b. Failed to properly interpret the MRI of Ms. Jensen as demonstrating evidence of metastatic disease;

 c. Failed to properly report the abnormal findings on the MRI of Ms. Jensen;

 d. Failed to communicate with Ms. Jensen and other health care workers regarding Ms. Jensen's medical condition;

 e. Negligently caused Ms. Jensen's misdiagnosis;

 f. Failed to comply with appropriate protocols, policies, procedures and guidelines for situations similar to Ms. Jensen's;

 g. Violated the applicable standard of care to act as a reasonable and prudent health care provider under the same or similar circumstances during the care and treatment of Ms. Jensen following the MRI; and

 h. Were otherwise negligent in a manner not presently known to Plaintiffs.

6. As a result of the joint and several negligence of: (a) the System Staff, for which NMHS is vicariously liable; (b) the Hospital Staff, for which TNMH is vicariously liable; (c) the RCI Staff, for which RCI is vicariously liable; and (d) Dr. Nelson, for which NMHS, TNMH and/or RCI is vicariously liable, Ms. Jensen suffered injuries including, but not limited to, the following:

a. Underwent medical procedures, which would not otherwise have been necessary;
b. Incurred medical expenses, which would not otherwise have been necessary;
c. Failed to receive timely and necessary medical treatments;
d. Medical expenses;
e. Loss of earnings and earning capacity sustained by Ms. Jensen;
f. Pain;
g. Suffering;
h. Inconvenience;
i. Mental suffering/anguish;
j. Emotional distress;
k. Loss of society and companionship;
l. Loss of consortium;
m. Injury to reputation;
n. Humiliation; and
o. Other damages and pecuniary losses for which recovery is allowed by law, the nature and extent of which are not presently known.

**WHEREFORE**, Plaintiffs pray for judgment against NMHS, TNMH, RCI, and Dr. Nelson for special damages in an amount undetermined at this time, for all general damages allowable under the laws of the State of Nebraska, and for such other and further relief as the Court may deem just and equitable under the circumstances.

### COUNT II – CORPORATE NEGLIGENCE

For their Count II claim against NMHS, TNMH, and RCI, Plaintiffs incorporate by reference Paragraphs 1 through 67 of the Allegations Common to All Counts and allege:

1. As a result of the health care provider-patient relationship between NMHS and Ms. Jensen, the System Staff owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

2. As a result of the health care provider-patient relationship between TNMH and Ms. Jensen, the Hospital Staff owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

3. As a result of the health care provider-patient relationship between RCI and Ms. Jensen, the RCI Staff owed Ms. Jensen a duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice.

4. NMHS, the System Staff, TNMH, the Hospital Staff, RCI and the RCI Staff breached their duties to Ms. Jensen to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers and members of their respective professions engaged in a similar practice because, in one or more of the following ways, each of them:

   a. Failed to develop appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to the issues within this case prior to Ms. Jensen's admission to the Hospital;

   b. Failed to promulgate appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to the issues within this case prior to Ms. Jensen's admission to the Hospital;

   c. Failed to institute appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to the issues within this case prior to Ms. Jensen's admission to the Hospital;

   d. Failed to comply with appropriate policies, memorandum, rules, procedures, protocols, standards, bulletins, statements, and/or other equivalent documents relevant to the issues within this case following Ms. Jensen's admission to the Hospital;

e. Failed to develop proper training manuals and in-house education relevant to the issues within this case prior to Ms. Jensen's admission to the Hospital;

f. Failed to communicate and/or deliver proper training manuals and in-house education to employees relevant to the issues within this case prior to Ms. Jensen's admission to the Hospital;

g. Failed to ensure that physicians and employees received adequate and thorough training in diagnosis and treatment of conditions relevant to the issues within this case such as the ones Ms. Jensen experienced;

h. Failed to properly ensure that staff, employees, agents, apparent agents, ostensible agents, and/or servants, including physicians and nurses, had the ability to properly manage a patient such as Ms. Jensen;

i. Failed to enforce adherence by employees, agents, apparent agents, ostensible agents, and/or servants to communicated training manuals and in-house education relevant to the issues within this case prior to and following Ms. Jensen's admission to the Hospital; and/or

j. Were otherwise negligent in a manner not presently known to Ms. Jensen.

5.  As a result of the joint and several negligence of: (i) the System Staff, for which NMHS is vicariously liable; (ii) the TNMH Staff, for which TNMH is vicariously liable; and (iii) the RCI Staff, for which RCI is vicariously liable, Ms. Jensen suffered the following injuries:

a. Underwent medical procedures, which would not otherwise have been necessary;
b. Incurred medical expenses, which would not otherwise have been necessary;
c. Failed to receive timely and necessary medical treatments;
d. Medical expenses;

  e. Loss of earnings and earning capacity sustained by Ms. Jensen;
  f. Pain;
  g. Suffering;
  h. Inconvenience;
  i. Mental suffering/anguish;
  j. Emotional distress;
  k. Loss of society and companionship;
  l. Loss of consortium;
  m. Injury to reputation;
  n. Humiliation; and
  o. Other damages and pecuniary losses for which recovery is allowed by law, the nature and extent of which are not presently known.

**WHEREFORE**, Plaintiffs pray for judgment against NMHS, TNMH, and RCI, and each of them, for special and general damages plus interest, costs, attorneys' fees and expenses as may be allowed by law, and for such further relief as this Court may deem just and proper under the circumstances.

### COUNT III – LOSS OF CONSORTIUM

For his Count III claim against NMHS, TNMH, RCI, and Dr. Nelson, Mr. Jensen incorporates by reference Paragraphs 1 through 67 of the Allegations Common to All Counts and alleges:

1. At all times relevant herein Mr. Jensen and Ms. Jensen were husband and wife.

2. As a direct and proximate result of the injuries sustained by Ms. Jensen, Mr. Jensen has been deprived of the services of his wife, and has suffered a loss of consortium.

3. Such services of Ms. Jensen, include but are not limited to, a past, present and future impairment or diminishment in the services, society, affection, care, comfort, companionship and conjugal rights of his wife.

**WHEREFORE**, Mr. Jensen prays for judgment against all Defendants, and each of them, for special damages in an amount undetermined at this time, for all general damages plus interest, costs, attorneys' fees and expenses as may be

allowed under the laws of the State of Nebraska, and for such further relief as this Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request that trial by jury of the foregoing action be held in the City of Omaha, Douglas County, Nebraska, and that the case be calendared accordingly.

**DATED**, this 12th day of April, 2024.

**SHARI L. JENSEN**, and **JAREL J. JENSEN**, Plaintiffs

By: /s/ *Patrick J. Cullan*
Patrick J. Cullan, #23576
Cullan & Cullan L.L.C.
1113 Harney Street
Omaha, Nebraska 68102-1829
Telephone: (402) 397-7600
Facsimile: (402) 397-3816
Email: pat@cullanlaw.com
ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Complaint was served to the following by mailing same via United States Postal Service as indicated below, this 12th day of April, 2024:

**USPS, CERTIFIED MAIL**

**Mike Hilgers**
Attorney General of the State of Nebraska
2115 State Capitol
Lincoln, Nebraska 68509

-and-

**Eric Dunning**
Director, The Nebraska Department of Insurance
1526 K St, Suite 200
Lincoln, Nebraska 68509

/s/ *Patrick J. Cullan*

-17-