IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHARI L. JENSEN, and JAREL J. JENSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>RADIOLOGIC CENTER, INC., and NICK L. NELSON, M.D.,<br><br>Defendants. | **8:24CV129**<br><br>**MEMORANDUM AND ORDER ON THE PARTIES' MOTIONS IN LIMINE** |

This medical malpractice action by Plaintiffs Shari L. Jensen and Jarel J. Jensen arises from the alleged failure of a radiologist, Defendant Nick L. Nelson, M.D., to identify and report a mass on Ms. Jensen's sternum shown in an MRI that was part of the initial workup for invasive breast cancer. Filing 1 at 7–8 (¶¶ 39–48). Dr. Nelson was an employee of Defendant Radiologic Center, Inc. (RCI). Filing 12 at 19 (¶ 3). This case is set for trial to begin on March 9, 2026. This case is now before the Court on the parties' Motions in Limine challenging a total of 50 categories of evidence. Filing 106; Filing 107. The Motions are granted in part and denied in part as set out below.

## I.  INTRODUCTION

### A.  Factual Context

The Court set out a rather expansive statement of the factual context to this litigation in its Memorandum and Order on Defendants' Motion to Exclude Plaintiffs' Experts and Motion for Summary Judgment. Filing 102. The Court will not repeat all of that statement here. Instead, the Court draws this summary of the factual context from the parties' Stipulated Facts in their Proposed Jury Instruction No. 11. Filing 112 at 19–20.

1

This case filed on April 12, 2024, involves a dispute about whether the medical care provided or not provided to Plaintiff Shari L. Jensen by Defendant Nick L. Nelson, M.D., fell below the standard of care and was the cause of injury to Shari Jensen and damages to Shari Jensen and her husband, Plaintiff Jarel J. Jensen. At all relevant times, Dr. Nelson, was an employee of Defendant Radiologic Center, Inc., (RCI) and was acting in the course and scope of his employment with RCI when he provided imaging studies as part of Shari Jensen's treatment.

On August 13, 2021, Shari Jensen underwent a mammogram, which was read as abnormal. On September 13, 2021, she underwent an ultrasound of her right breast, which demonstrated the presence of a mass. On September 17, 2021, she underwent an ultrasound-guided biopsy of the right breast mass, on which the pathologist reported "invasive ductal carcinoma, right breast." On October 12, 2021, Shari Jensen presented to Nebraska Methodist Hospital (Methodist) for a "Bilateral MRI Breast w/ and w/o Contrast," with an indication of "Invasive breast cancer, stage I/II/III, initial workup." The MRI was interpreted by Dr. Nelson, the defendant radiologist. At all relevant times, Dr. Nelson was a licensed physician in the State of Nebraska and a board-certified radiologist.

As the interpreting radiologist, Dr. Nelson had a duty to review the images generated by the study and to prepare a written radiology report. Dr. Nelson acknowledges that, as a radiologist, he had a duty to identify and report abnormalities visible on the imaging study. An abnormal enhancing lesion in the patient's sternum was present on the images at the time the study was interpreted by Dr. Nelson. However, Dr. Nelson's radiology report did not identify or describe an abnormal enhancing lesion in the sternum. Dr. Nelson did not communicate the presence of an abnormal enhancing lesion in the sternum to the referring provider or to any other treating clinician.

2

### B. Procedural Background

The Jensens filed their Complaint in this matter on April 12, 2024. Filing 1. They named as Defendants Nebraska Methodist Health System, Inc., (NMHS); The Nebraska Methodist Hospital (TNMH); RCI; and Dr. Nelson. Filing 1 at 2 (¶ 1). However, NMHS and TNMH were subsequently dismissed without prejudice. Filing 64. The Jensens assert three claims against Dr. Nelson and RCI. Count I alleges medical malpractice/professional negligence against Dr. Nelson and RCI. Filing 1 at 10. Count II alleges corporate negligence against RCI. Filing 1 at 12. Count III alleges Mr. Jensen's claim for loss of consortium against Dr. Nelson and RCI. Filing 1 at 15.

On September 9, 2025, Dr. Nelson and RCI filed a Motion to Exclude Plaintiffs' Experts, Dr. Kligerman and Dr. Van Scoy-Mosher, Request for Oral Argument, and Motion for Summary Judgment. Filing 82. The Court ordered the parties to submit corrected filings, Filing 94, and those corrected filings were submitted on November 14, 2025, and December 1, 2025, respectively. Filing 95; Filing 96. On January 23, 2026, the Court denied in its entirety Dr. Nelson's and RCI's Motion to Exclude Plaintiffs' Experts, Dr. Kligerman and Dr. Van Scoy-Mosher, Request for Oral Argument, and Motion for Summary Judgment. Filing 102.

The Motions in Limine now before the Court followed in due course on February 9, 2026. Filing 106; Filing 107. Defendants' Pretrial Motion in Limine seeks exclusion of 36 categories of evidence. Filing 106.[1] Plaintiffs' Motions in Limine seek exclusion of 14 categories of evidence. Filing 107.

This case is set for a jury trial to begin on March 9, 2026. Filing 79.

---

[1] There is no category 21 in Defendants' Motion in Limine. *See* Filing 106 at 8–9.

## II. LEGAL ANALYSIS

### A. The Function of Motions in Limine

Federal Rule of Evidence 104(a) provides, "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine "serve as a gatekeeping function that permits a trial judge to exclude or eliminate inadmissible evidence submissions that ought not be presented to a jury." *McGuire v. Cooper*, No. 16-4, 2018 WL 3935053, at *1 (D. Neb. Aug. 16, 2018) (citing *Jonasson v. Lutheran Child and Family Services*, 115 F.3d. 436, 440 (7th Cir. 1997)). The opposite is also true, permitting the trial judge to determine that evidence is admissible before trial. *See United States v. Haig*, 365 F. Supp. 3d 1101, 1105 (D. Nev. 2019) ("Motions in limine may be used to exclude or admit evidence in advance of trial.").

As the Court has previously stated, "it should be obvious to the parties that the Court cannot effectively rule on a motion in limine without the precise evidence at issue before the Court. Thus, if parties fail to provide the challenged evidence or do not identify the evidence in question with sufficient specificity, the Court may not be able to rule on the challenge pretrial. While specific evidence may be excludable on relevance versus prejudice grounds, *see* Fed. R. Evid. 401, 402, 403, or foundation or hearsay grounds, *see* Fed. R. Evid. 802, those determinations must sometimes await trial, where the Court can discern more clearly the context and purpose of such evidence. Also, the Court will not grant a motion that simply asks the Court to apply the law. *See United States v. Moua*, No. CR 23-179 (JRT/LIB), 2024 WL 1479166, at *1 (D. Minn. Apr. 5,

2024) ("The Court will decline to issue a ruling on the motions in limine that merely request the parties follow the law because it finds such a ruling unnecessary and is prepared to address those issues if they arise at trial.").

As the Eighth Circuit has observed,

> Though motions in limine sometimes preserve evidentiary issues for appeal, they do so only when the district court "definitively" rules on them. *See* Fed. R. Evid. 103(b). Such a motion does not suffice "when the district court reserves its ruling [on the motion] or otherwise indicates that the ruling is provisional ...." *[United States v.] Young*, 753 F.3d [757,] 775 [(8th Cir. 2014)] (citing Advisory Committee's Notes to 2000 Amendment of Fed. R. Evid. 103). To be definitive, the ruling must "not invite reconsideration." *Id.* Put differently, "a district court's invitation to re-raise evidentiary challenges renders its ruling non-definitive." *Id.*

*United States v. Broussard*, 87 F.4th 376, 379 (8th Cir. 2023).

With the proper function of motions in limine in mind, the Court turns to consideration of the Motions now before the Court.

### B.  Defendants' Motion in Limine

As mentioned above, Defendants' Pretrial Motion in Limine seeks exclusion of 36 categories of evidence. Filing 106. The Court will consider these categories in turn.

### 1.  *Exclusion of Evidence of Malpractice/Liability Insurance*

Defendants assert that evidence of malpractice/liability insurance is barred by Federal Rule of Evidence 411 and that any probative value it might have is substantially outweighed by the danger of unfair prejudice or confusion of the issues under Federal Rule of Evidence 403. Filing 106 at 2. Plaintiffs do not object to this part of Defendants' Motion. Filing 115 at 4. Thus, it is granted.

*2. Exclusion of Mention of the Nebraska Hospital-Medical Liability Act, Neb. Rev. Stat. § 44-2800, et seq. or Its "Cap" on Damages*

Defendants seek to bar mention of this information except to the extent needed for the Court to define for the jury the legal duty of care owed by defendants, and to define "malpractice" under Nebraska Law pursuant to Federal Rules of Evidence 411, 401, and 402. Filing 106 at 2. Plaintiffs do not object to this part of Defendants' Motion. Filing 115 at 4. Thus, it is granted.[2]

*3. Exclusion of Evidence of Other Malpractice Claims or Lawsuits against Defendants*

Defendants assert that such evidence is irrelevant and immaterial and unfairly prejudicial if somehow probative under Federal Rules of Evidence 401, 402, and 403. Filing 106 at 2. Defendants identify specific cases brought by Plaintiffs' counsel against Defendants. Filing 106 at 2. Plaintiffs contend that Defendants' request is overbroad and premature and that evidence of other similar claims may be admissible for non-character purposes expressly permitted under the Federal Rules of Evidence, including Rule 404(b)(2). Filing 115 at 5. Plaintiffs contend that admissibility of this evidence depends on the purpose, similarity, and trial posture, so the Court should deny the motion or defer ruling until the context of the evidence appears at trial. Filing 115 at 7.

The Court currently cannot think of a situation where references to other malpractice claims or lawsuits against defendants would be admissible or allowed to be presented to the jury. However, the Court declines to make a "blanket" exclusion of such evidence pretrial. Any such references must be communicated to the court out of the hearing of the jury before making any such reference so the Court can assess the appropriateness of any such references.

---

[2] The Court notes, however, that the question of the applicability will obviously be addressed by the Court in the event the jury issues a verdict in excess of the cap.

*4.    Prohibition of Identification of Plaintiffs' Counsel as "Dr. Cullan"*

Defendants seek an order barring anyone from identifying Plaintiffs' attorneys or their family members as physicians/doctors or as having gone to medical school or obtained a medical diploma, as well as barring references to Plaintiffs' counsel as "Dr. Cullan." Filing 106 at 3. Defendants assert that any such references are irrelevant and immaterial and could lead jurors to give undue weight to statements or arguments by Plaintiffs' counsel in this medical malpractice action. Filing 106 at 3. Plaintiffs argue that this part of Defendants' Motion is "precautionary" and assumes that Plaintiffs intend improper conduct. Filing 115 at 7–9. Nevertheless, they do not object to counsel being referred to as "Mr. Cullen" to the extent that the Court wishes to standardize courtroom references to avoid confusion. Filing 115 at 8–9.

The Court concludes that Plaintiffs' counsel's medical education or a medical title is irrelevant and potentially more prejudicial than probative. Fed. R. Evid. 402, 403. It is not unreasonable to believe that lay jurors might believe such qualifications give extra weight to counsel's statements or arguments, and that precautions to prevent such improper considerations is appropriate. Therefore, the Court grants this part of Defendants' Motion to the extent that Plaintiffs must take reasonable steps to ensure that their counsel is identified at all times simply as "Mr." not "Dr."

*5.   Exclusion of References to Financial Status*

Defendants seek exclusion of any reference to the financial status of the parties; any reference to the profits and income of the healthcare industry as a whole or of these Defendants; and any statements, assertions, or requests that the jury "send a message" to the healthcare industry with its verdict. Filing 106 at 3–4. Defendants assert such references are more prejudicial than probative so that they should be excluded under Federal Rule of Evidence 403. Filing 106 at 4.

Plaintiffs argue that the request is overbroad and legally incorrect depending on the claims submitted to the jury. Filing 115 at 9. They argue that financial evidence may be relevant to corporate control, resource allocation, staffing levels, quality assurance systems, and feasibility of safeguards. Filing 115 at 9. They also argue that they should not be precluded from arguing that standards exist to protect patients, that adherence to the standard of care matters, and that verdicts enforce accountability. Filing 115 at 9.

Whether any reference to financial status of the parties could be relevant appears to the Court to depend upon the nature of the evidence and the context in which it is raised at trial. However, it is not clear to the Court that a Prohibition of financial status evidence would necessarily bar exploration of corporate control, resource allocation, staffing levels, quality assurance systems, and feasibility of safeguards, if indeed any of those topics are demonstrated to be relevant in this case. Financial status could be relevant to punitive damages. *See, e.g.*, *Carter v. Kansas City S. Ry. Co*., 456 F.3d 841, 846 (8th Cir. 2006). However, where punitive damages are not available, financial status information would be a distraction from issues properly before the jury and excludable under Rule 403. Thus, evidence of financial status is excluded until and unless a party demonstrates to the Court outside the presence of the jury that such evidence relates to an issue that is relevant to the case and not unduly prejudicial.

The Eighth Circuit has recognized that "send a message" arguments are generally improper. *See Sinisterra v. United States*, 600 F.3d 900, 910 (8th Cir. 2010). While such an argument may not be overly prejudicial in the context of asking the jury to determine the appropriate community standard, *see Lawrey v. Good Samaritan Hosp*., 751 F.3d 947, 954 (8th Cir. 2014), the Court finds that casting the argument in terms of "sending a message" rather than in terms of the appropriate community standard is unnecessary and potentially inflammatory.

Therefore, any argument not cast in terms of the appropriate community standard is barred under Rule 403.

Thus, this part of Defendants' Motion is granted in part and denied in part.

### 6. Exclusion of Evidence Comparing the Earning Power or the Financial or Economic Conditions of the Parties

Defendants offer no statement of a reason to exclude such evidence. Filing 106 at 6. Plaintiffs state that to the extent that Defendants seek to prevent improper appeals to wealth disparity or class-based prejudice, Plaintiffs do not object, but the motion is overbroad and should not preclude admissible damages evidence or proper rebuttal. Filing 115 at 10. Plaintiffs argue that the motion should be denied to the extent it could restrict admissible evidence of Plaintiffs' economic losses or proper rebuttal evidence. Filing 115 at 12. They contend that a narrowly tailored ruling rather than a blanket prohibition is the appropriate remedy. Filing 115 at 12.

Whether any reference to financial capacity or condition of the parties could be relevant appears to the Court to depend upon the nature of such evidence and the context in which such evidence is presented at trial. However, because such evidence is potentially prejudicial, this evidence is excluded until and unless a party demonstrates to the Court outside the presence of the jury that such evidence relates to an issue that is relevant to the case and not unduly prejudicial. This part of Defendants' Motion is granted.

### 7. Prohibition of Communications by Plaintiffs with the Media

Defendants seek a bar on any communication by the Plaintiff, Plaintiff's family members, or attorneys of Plaintiff or their agents or employees, with newspaper, radio, or television media, or social media regarding this case, either prior to or during the trial. Filing 106 at 4. However, Defendants again offer no statement of a reason to bar such communications. Filing 106 at 5.

Plaintiffs argue that such a bar would be a "gag order" and an unconstitutional prior restraint on speech. Filing 115 at 12. Indeed, Plaintiffs contend that this is not an evidentiary matter at all. Filing 115 at 12. They also contend that the issue can be addressed by careful voir dire, jury admonitions, an instruction prohibiting jurors from viewing media coverage, and sequestration as an extreme measure. Filing 115 at 13.

The Court expects reasonable and respectful conduct from the attorneys during trial. The Court further expects all parties not to take actions in the public forum which might spoil the jury pool or intentionally or unintentionally communicate messages to the sitting jurors in this case. The Court denies this motion subject to reasserting it in the event circumstances justify reassertion.

8.    *Prohibition of References to any Medical Article, Textbook, or Publication Not Previously Identified and Produced by Plaintiffs*

Defendants assert that such materials should be excluded if used other than for impeachment. Filing 106 at 4. Defendants argue that with reference to learned treatises, the Court should prohibit Plaintiffs, their counsel, and their expert witnesses from displaying to the jury any medical literature, texts, or statistics gleaned from hearsay sources. Filing 106 at 4. Defendants argue that for such material to fall within the narrow exception to hearsay in Federal Rule of Evidence 803(18), it must first be disclosed to the opposing party. Filing 106 at 4. Defendants argue Plaintiffs did not disclose such information in response to discovery requests and have not supplemented their responses in anticipation of trial. Filing 106 at 5.

Plaintiffs argue that this part of Defendants' Motion is overbroad, misstates Federal Rule of Evidence 803(18), and seeks remedies beyond what the Federal Rule of Evidence require. Filing 115 at 14. They assert that they have properly disclosed their experts and the bases for their opinions, so no discovery violation requires exclusion. Filing 115 at 14–15. They also argue that

Rule 803(18) does not require pretrial production of such literature. Filing 115 at 14. They represent that they do not intend to display treatises to the jury. Filing 115 at 14–15. Plaintiffs argue that use of publicly available medical studies is not "trial by ambush." Filing 115 at 15. Plaintiffs argue that the proper course is for the Court to enforce Rule 803(18) in the ordinary course of trial. Filing 115 at 16.

The Eighth Circuit has explained that the hearsay exception in Rule 803(18) says that "[a] statement contained in a treatise, periodical, or pamphlet [is admissible] if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority." *Williams v. Baum*, 48 F.4th 571, 573 (8th Cir. 2022). The court also noted that the rule "says that if '[s]tatements in [l]earned [t]reatises, [p]eriodicals, or [p]amphlets' are admitted, 'the statement may be read into evidence but not received as an exhibit.'" *Id.* (quoting Fed. R. Evid. 803(18)). The Court concludes that Defendants are attempting to impose restrictions on evidence within the scope of Rule 803(18) greatly in excess of what either that rule or the disclosure rules in Federal Rule of Civil Procedure 26 require.

Thus, this part of Defendants' Motion is denied. Defendants may object at trial to any use of such evidence that they believe violates Federal Rule of Evidence 803(18).

9. *Exclusion of References to Documents Not Disclosed Prior to Trial*

Defendants assert that such references would constitute unfair surprise and prejudice them, citing Federal Rules of Civil Procedure 401 and 402 and *GenoSource, LLC v. Secura Ins.*, 637 F. Supp. 3d 633, 638 (N.D. Iowa 2022). Plaintiffs contend that this request is overbroad, premature, and unnecessary. Filing 115 at 16. Among other things, they argue that they have no intention of introducing exhibits not disclosed in violation of Federal Rule of Civil Procedure 26. Filing 115 at

11

16. They argue the request is overbroad and vague amounting to a blanket exclusion of unspecified documents. Filing 115 at 17. They also contend that a determination of improper references to documents must be made in the context of trial. Filing 115 at 18.

The Court concludes that this part of Defendants Motion amounts to no more than an improper request that the Court apply the law, specifically Federal Rules of Civil Procedure 26 and 37. *See United States v. Moua*, No. CR 23-179 (JRT/LIB), 2024 WL 1479166, at *1 (D. Minn. Apr. 5, 2024) ("The Court will decline to issue a ruling on the motions in limine that merely request the parties follow the law because it finds such a ruling unnecessary and is prepared to address those issues if they arise at trial."). This part of Defendants' Motion is denied.

### 10. Exclusion of Demonstrative Exhibits Containing Words that Reflect Expert Witnesses' Reports

Defendants explain that this exclusion would include PowerPoint and other demonstrative exhibits. Filing 106 at 6. They assert that expert reports are inadmissible hearsay. Filing 106 at 6. Plaintiffs assert that this part of Defendants' Motion misstates the law and seeks an unnecessary and overbroad restriction on ordinary trial practice. Filing 115 at 18. Plaintiffs argue that demonstrative exhibits that supplement a witness's spoken testimony are not more prejudicial than probative. Filing 115 at 19. More specifically, they assert that demonstrative exhibits can properly reflect trial testimony, and they do not intend to offer experts' reports. Filing 115 at 19. Excluding demonstrative exhibits that "reflect" expert reports is overbroad, they contend, because expert testimony necessarily reflects the opinions expressed in the expert's report. Filing 115 at 19–20.

The proper question is whether a demonstrative exhibit is "unfair and misleading." *See, e.g., United States v. Fechner*, 952 F.3d 954, 960 (8th Cir. 2020). Demonstrative exhibits that

merely provide a visual aid during a witness's testimony are permissible if agreed upon by the parties or approved by the Court. *Id.*

The Court will not allow the parties to create elaborate or even simple demonstrative exhibits that seek to allow the jury to see evidence or statements that have not been admitted or misstates the evidence. The Court expects the parties to provide any demonstrative exhibit to the opposing party at least 48 hours before use. The parties are then instructed to bring this to the Court's attention if a dispute arises regarding any demonstrative exhibit.

This part of Defendants' Motion is denied without prejudice to making a further motion as outlined above.

### 11. *Exclusion of Evidence about Whether a Patient's Treatment Underwent Peer or Other Quality Review*

Defendants contend that such evidence is prohibited by Neb. Rev. Stat. § 71-3401 *et seq.* Filing 106 at 6. They also argue that such evidence or questions on this issue are inherently prejudicial, particularly because a witness may decline to answer on the basis of privilege and be made to look "bad." Filing 106 at 6. Plaintiffs argue that this part of Defendants' Motion is overbroad and would preclude permissible, non-privileged evidence. Filing 115 at 20. They assert that the existence of peer review is separate from the substance of any peer review. Filing 115 at 21. Plaintiffs contend that Defendants seek an improper blanket exclusion. Filing 115 at 21.

Until and unless there is some query about any peer or quality review process that actually attempts to elicit privileged information, there is no need for exclusion of such queries. Moreover, Defendants have failed to show that a query about whether a patient's treatment underwent peer or other quality review is irrelevant or that its probative value is outweighed by potential prejudice.

This part of Defendants' Motion is denied.

13

*12. Exclusion of Arguments About or References to Lack of Compassion*

Defendants argue that such arguments or references are irrelevant and have no probative value that would outweigh their potential for prejudice. Filing 106 at 7. Defendants contend that the only purpose of such arguments or references is the improper one of inflaming the jury. Filing 106 at 7. Plaintiffs contend that this part of Defendants' Motion is vague and overbroad and improperly attempts to preclude admissible evidence about Defendants' conduct and communications. Filing 115 at 22. They assert that questions about what Defendants said or did, how they communicated diagnostic findings, whether they acknowledged concerns, and responded appropriately to clinical developments are all legitimate. Filing 115 at 22.

Direct accusations regarding any purported "lack of compassion" are prejudicial and will not be allowed. The Court, however, agrees with Plaintiffs that inquiries about Defendants' conduct do not necessarily equate with inquiries suggesting lack of compassion. The Court reserves ruling on this item and will rule at trial if needed.

*13. Exclusion of Evidence of or References to Disciplinary Proceedings*

Defendants assert that such evidence or references are irrelevant because any standards used by the Department of Health and Human Services in assessing license complaints and imposing regulatory discipline are different from the standards applicable to Plaintiffs' medical malpractice claim, and have little probative value that is clearly outweighed by potential prejudice. Filing 106 at 7. Plaintiffs assert that a categorical exclusion is not appropriate because disciplinary evidence may be relevant depending on context. Filing 115 at 24. They point out that such evidence may include relevant admissions, findings directly related to the care at issue, and credibility evidence. Filing 115 at 25.

The Court is concerned that allowing such evidence has the outsized potential to cause the trial to devolve into a confusing and time-wasting "mini-trial" over the extent to which administrative or disciplinary standards are consistent with the standards applicable in this medical malpractice trial warranting exclusion under Rule 403. *See Orduno v. Pietrzak*, 932 F.3d 710, 719 (8th Cir. 2019) ("The court permissibly ruled that the disputed evidence lacked probative value and carried too great a risk of unfair prejudice, confusing the issues, and wasting time in mini-trials over the propriety of other obtainments." (citing Fed. R. Evid. 403)). This evidence also risks the further prejudice of inviting the jury to surrender their decision-making based on the evidence at trial to a disciplinary body that may have heard different evidence and applied a different standard. Fed. R. Evid. 403.

This part of Defendants' Motion is granted. That said, the fact that admissions or other evidence derives from disciplinary proceedings does not necessarily make such admissions or evidence inadmissible.

*14. Exclusion of Evidence or Argument that Defendants were Unqualified*

Defendants assert that Plaintiffs have not pleaded any cause of action based on lack of medical privileges or credentials to perform the services provided to Mrs. Jensen. Filing 106 at 7. They also point out that Plaintiffs have offered no expert testimony that Defendants were not qualified. Filing 106 at 7. Thus, they assert that this category of evidence should be excluded under Federal Rules of Evidence 401, 402, and 403. Filing 106 at 7. Plaintiffs argue that Defendants are attempting to exclude relevant evidence regarding competence, training, experience, and scope of practice. Filing 115 at 26. More specifically, they assert that they should not be prevented from making inquiries into training, experience, specialty practice, scope of expertise, or qualifications relevant to the standard of care and credibility. Filing 115 at 27.

The Court agrees with Plaintiffs that this part of Defendants' Motion is overbroad because it would impose a blanket exclusion on evidence and inquiries about training, experience, practice, and scope of expertise that are relevant to issues in this case, including the standard of care and credibility. Such inquiries do not necessarily amount to challenges to medical privileges or credentials, as Defendants suggest. This part of Defendants' Motion is denied.

15. *Prohibition of Plaintiffs' or Plaintiffs' Counsel's Communication with Members of the Jury*

In a single sentence, Defendants request that the Court prohibit any communication between or among Plaintiffs, Plaintiffs' counsel, and members of the jury, whether verbal, in writing, or via social media during the course of trial. Filing 106 at 7. Plaintiffs contend that this part of Defendants' Motion is unnecessary and duplicative of existing law. Filing 115 at 27. The Court concludes that this part of Defendants' motion is covered by existing law. *See Moua*, 2024 WL 1479166, at *1. This part of Defendants' Motion is denied.

16. *Exclusion of Any Reference to a "Conspiracy of Silence"*

Defendants argue that any reference to a "conspiracy of silence" among area physicians and healthcare providers would have no probative value, is purely speculative, lacks foundation, and would be highly prejudicial. Filing 106 at 8. Plaintiffs contend that this part of Defendants' Motion is vague, because there is no definition of "conspiracy of silence," and overbroad, because it would preclude proper inquiry into bias, credulity, and professional relationships. Filing 115 at 28.

This Court sees no reason Plaintiff could appropriately refer to a "conspiracy of silence" in this trial. This motion is granted subject to further reconsideration if Plaintiff can communicate some valid reason this phrase should be allowed in this trial.

16

*17. Prohibition of References to a Duty to Ensure Patient "Safety"*

Defendants assert that such a reference would be a misrepresentation of Defendants' legal duty as defined by law. Filing 106 at 8. They argue that use of the term "safety" is likely to confuse the issue. Filing 106 at 8. Plaintiffs argue that Defendants are attempting to prohibit use of ordinary language that is commonly and appropriately used in describing medical practice. Filing 115 at 29. Indeed, they argue that "safety" is consistent with the standard of care. Filing 115 at 30. They contend further that jury instructions will cure any risk of confusion. Filing 115 at 30.

The Court concludes that paraphrasing or recharacterizing the standard care in terms of "patient safety" is not just unnecessary but presents a serious risk of confusing the jury that outweighs any probative value such a paraphrase or recharacterization may have. *See* Fed. R. Evid. 403 (allowing exclusion of evidence that poses a risk of confusing the jury that outweighs probative value of the evidence). In this instance, the Court concludes that a jury instruction defining the standard of care is unlikely to cure the potential prejudice; rather, both parties will be best served by scrupulous adherence to the Court's definition of the standard of care.

This part of Defendants' Motion is granted.

*18. Exclusion of Documentary Evidence to Define the Standard of Care*

Defendants contend that admitting such evidence would contradict the standard of care set out in Neb. Rev. Stat. § 44-2810. Filing 106 at 8. They assert that absent expert testimony—not present in this case—that hospital policies, guidelines, or medical literature actually set the standard of care, evidence about policies, procedures, and guidelines are irrelevant. Filing 106 at 8. They also argue that any new opinions on the standard of care would constitute unfair surprise and prejudice. Filing 106 at 8. Plaintiffs assert that Defendants' request would exclude relevant evidence that informs expert testimony about the standard of care. Filing 115 at 31. Plaintiffs

contend that this issue can also be resolved by a limiting instruction clarifying that the standard of care is defined by the Court's instructions. Filing 115 at 32.

"Neb. Rev. Stat. § 44-2810 (Reissue 2021) defines the general standard of care in medical malpractice cases." *Slater v. Ichtertz*, 26 N.W.3d 504, 516 (Neb. 2025). However, because expert testimony is required to establish the specific standard of care in medical malpractice actions— that is, the standard "which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances," *id.*—the information an expert relied on in determining the "local" standard of care is relevant to the weight and credibility of the expert's opinion. *See* Fed. R. Evid. 702. The burden falls on a party to demonstrate that documents on which an expert relied contradict the statutory standard.

This part of Defendants' Motion is denied.

19. *Prohibition of Publishing to the Jury Documents not Received in Evidence or Demonstrative Exhibits the Parties Have Not Agreed Upon*

Defendants offer no further explanation of the basis for exclusion of this category of evidence. Filing 106 at 8. Plaintiffs agree that materials not admitted into evidence should not be presented to the jury as substantive evidence, but they assert that Defendants are improperly trying to restrict the routine and permissible use of demonstrative exhibits. Filing 115 at 33.

Defendants' assertion that only exhibits received in evidence should be published to the jury simply asks the Court to apply the law, so it is denied. *See Moua*, 2024 WL 1479166, at *1. Indeed, as the Court will advise the parties before trial, the Court expects counsel to ask the Court before publishing any exhibit, even exhibits in evidence. Exhibits not in evidence will not be allowed to be published to the jury. As outlined above, the Court requires all demonstrative

exhibits to be provided to the opposing party 48 hours before use. The parties must bring the matter to the court's attention outside the hearing of the jury if there is a dispute on demonstrative exhibits. As mentioned above, the proper question is whether a demonstrative exhibit is "unfair and misleading." *See, e.g., Fechner*, 952 F.3d at 960.

### 20. Prohibitions on References to Defendants' Attorneys as "Specializing" in Defending Medical Malpractice Lawsuits or "Protecting Guilty Doctors"

Defendants assert that any such references are irrelevant and improper ad hominem attacks that should be prohibited under Federal Federal Rule of Evidence 401. Filing 106 at 8. Plaintiffs agree that such ad hominem attacks on counsel are improper and assert that they have no intention of engaging in them. Filing 115 at 33. Thus, they assert that this part of Defendants' Motion should be denied as unnecessary. Filing 115 at 33.

The Court agrees with a colleague's succinct statement, "[A]d hominem attacks are neither persuasive, in this Court, nor professional." *Certain Underwriters at Lloyd's v. S. Pride Trucking, Inc.*, 331 F. Supp. 3d 956, 974 (D. Neb. 2018). They will not be tolerated. However, this part of Defendants' Motion requests that the Court apply the law. *See Moua*, 2024 WL 1479166, at *1. This part of Defendants' Motion is denied.

### 21. [No Category Stated]

Defendants inadvertently skipped number 21 in the list of challenged categories of evidence. The Court has included this heading solely to maintain consistency with Defendants' numbering of challenged categories of evidence.

### 22. Prohibition of References to Offers to Compromise

Defendants ask the Court to prohibit any references to offers to compromise, other offers to settle, or settlement negotiations between the parties pursuant to Federal Rule of Evidence 408.

Filing 106 at 9. Plaintiffs assert that any order should be limited to prohibiting settlement evidence offered to prove liability or damages and should preserve the Rule's recognized exceptions. Filing 115 at 33. This an instance of both parties asking the Court to apply the law. *See Moua*, 2024 WL 1479166, at *1. This part of Defendants' Motion is denied.

23. *Prohibition of References to Documents Inadvertently Produced*

Defendants ask the Court to prohibit any reference to documents Defendants inadvertently produced in this or other litigation that would otherwise be privileged, without further explanation. Filing 106 at 9. Plaintiffs argue that Defendants do not identify any specific documents that were inadvertently produced nor have they represented that any inadvertent production has occurred in this case, so that this part of Defendants' Motion is speculative and premature and should be denied. Filing 115 at 33. The Court agrees with Plaintiffs. This part of Defendants' Motion is denied for failure to specify the evidence at issue. That being said, the Court would be gravely concerned if an attorney was so brazen as to waste the Court's time by trying to make reference to a document or an exhibit that clearly was produced in error or produced in another litigation.

24. *Prohibition of References to Defendants' Filing of Pretrial Motions*

Defendants argue that such references are irrelevant under Federal Rule of Civil Procedure 401. Filing 106 at 9. Plaintiffs have no objection to this part of Defendants' Motion. Filing 115 at 34. The Court agrees with the parties that such references are inappropriate, so this part of Defendants' Motion is granted.

25. *Prohibition of References to Verdicts in Other Cases*

Defendants argue that such evidence is wholly irrelevant when the cases are unrelated and potentially unduly prejudicial under Federal Rule of Evidence 401 and 403. Filing 106 at 9. Plaintiffs argue,

The motion is overly broad and improperly attempts to restrict permissible argument. Plaintiffs do not intend to introduce other verdicts as substantive evidence of liability or damages. However, Defendants are not entitled to a blanket Prohibition of all references during argument.

Filing 115 at 34.

The Court can think of no circumstances where verdicts from other cases should be allowed to be presented or argued to the jury. This motion is granted subject to the Plaintiff asking the Court to revisit this order upon presenting case or statutory law illustrating this conclusion is in error.

### 26. Prohibition of References to the Jury as the "Conscience" or "Voice" of the Community

Defendants ask the Court to prohibit Plaintiffs from making any references to the jury about acting as a "conscience of the community," the "voice of the community," or suggesting that a verdict for the Plaintiff would be for the "betterment of the community" or improve the "safety of medical care" for others. Filing 106 at 9. Defendants argue that such references would be intended to inflame the jury and would be unfairly prejudicial. Filing 106 at 9. Plaintiffs assert that this part of Defendants' Motion is overbroad and improperly attempts to restrict permissible advocacy. Filing 115 at 34. More specifically, Plaintiffs argue that it is not improper to remind the jurors that they represent the community; that they apply community standards of reasonable conduct; and that their verdict enforces the civil justice system's accountability function. Filing 115 at 34. They contend that the Court can address timely objections to comments that Defendants believe exceed the bounds of proper advocacy. Filing 115 at 34.

The Eighth Circuit recently explained,

The line between zealous advocacy and misconduct can sometimes be fuzzy, but we recently concluded that a prosecutor did not go too far when he asked the jury

21

to provide "justice for the community" and "hold [the defendant] accountable."
*United States v. Obi*, 25 F.4th 574, 580 (8th Cir. 2022).

*United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023). However, the Eighth Circuit pointed

out that the prosecutor had "steered clear of the line" by urging the jury to reach "a conclusion

based on the evidence." *Id.* The Eighth Circuit also "highlight[ed]" that "[u]nless calculated to

inflame, an appeal to the jury to act as the conscience of the community is not impermissible."

*United States v. Ralston*, 973 F.3d 896, 910 (8th Cir. 2020) (quoting *United States v. Sanchez-*

*Garcia*, 685 F.3d 745, 753 (8th Cir. 2012)). However, those were both criminal cases where the

stakes for the community may be higher.

> In a civil case, the Eighth Circuit observed,
>
> Counsel . . . ended the argument by "giving" to the jury "the power and
> responsibility for correcting injustices." This was no different than a prosecutor
> urging the jury at the end of a criminal case "to be the conscience of the
> community," an improper argument that, in a close case, may warrant a new trial.
> *United States v. Johnson*, 968 F.2d 768, 771–72 (8th Cir.1992). . . . "[T]he cardinal
> rule of closing argument [is] that counsel must confine comments to evidence in
> the record and to reasonable inferences from that evidence." *Whittenburg*, 561 F.3d
> at 1128–29; *see People v. Hayes*, 183 Ill.App.3d 752, 132 Ill.Dec. 45, 539 N.E.2d
> 355, 358–60 (1989) (reversing sexual assault conviction and remanding for a new
> trial because prosecutor vouched for the victim's credibility by describing a
> personal experience).

*Gilster v. Primebank*, 747 F.3d 1007, 1011 (8th Cir. 2014). The court found this and other

emotionally charged arguments were improper and required reversal of the district court's

judgment. *Id.* at 1013.

The Court notes that Defendants provide no support for the notion that Plaintiff might try

to utilize these argument tactics. However, Plaintiffs' argument appears to the Court to be contrary

to law or try to open the door to comments that are unnecessary and potentially prejudicial. The

Court cannot see any circumstances where the phrases referenced above should be allowed in

argument and will not allow them. However, if Plaintiff believes authority or circumstances are such that such arguments or phrases should be allowed, the parties may bring this issue back to the attention of the Court for reconsideration outside of the hearing of the jury.

> 27. *Prohibition of Use of Videotaped Excerpts of Depositions in Voir Dire, Opening Statements, Closing Arguments, or Prior to Videotaped Trial Testimony*

Defendants' entire argument on this category of evidence is their "request [for] strict compliance with NELR 32.1 as to the use of any video depositions at trial." Filing 106 at 9. Plaintiffs contend that this part of Defendants' Motion is overbroad. Filing 115 at 35. The assert, "If the Court has ruled in advance on admissibility and designated excerpts are approved, Plaintiffs should not be barred from referencing that evidence in a manner consistent with this Court's rulings." Filing 115 at 35.

The fact that Plaintiff has offered resistance to this motion is concerning to the Court. The Court has not allowed use of videotaped excerpts of depositions in voir dire, opening statements, closing arguments, or prior videotaped testimony. If the Court accepts prior videotaped testimony it will only do so after all requirements of its pretrial orders have been met and may only be shown to the jury after it is offered and received arrive the course of the trial, and certainly not in opening statements or voir dire.

> 28. *Exclusion of Testimony that "Usurps" the Court's Role in Instructing the Jury*

In this part of Defendants' Motion, Defendants ask the Court to do the following:

> Prohibit testimony or efforts to elicit testimony that would usurp the Court's role in instructing the jury as to the definition of the standard of care that should be employed in this case. Similarly, questions that use hypotheticals with incomplete facts to elicit definitions of the standard of care, where such facts have no bearing on the issues in this case, should not be allowed. See N.J.I.2d Civ. 12.01; Neb Rev. Stat. § 44-2810.

23

Filing 106 at 9. The essence of Defendants' argument is that the jury should not hear extended testimony on definitions of the standard of care in a way that would confuse the jury or make the jury believe that they will decide among several theories or definitions of the standard of care. Filing 106 at 10. Plaintiffs argue that this part of Defendants' Motion is overbroad and would improperly restrict expert testimony that is essential in a professional negligence case. Filing 115 at 36. They contend that while the Court instructs the jury on the definition of the standard of care, experts properly opine on application of the standard. Filing 115 at 36. Plaintiffs argue that expert testimony explaining how the standard of care operates in medical practice is not a usurpation of the Court's role but is instead essential to the jury's task. Filing 115 at 37.

The Court concludes that this is an instance in which the context and content of expert testimony regarding the standard of care are essential to the determination of the admissibility of any statements challenged as "usurping" the Court's role. Thus, this part of Defendants' Motion is denied as premature.

### 29. Exclusion of Evidence that a Verdict for Plaintiff Will Not Adversely Affect Defendants' Practice of Medicine

This part of Defendants' Motion seeks to exclude any argument, testimony, or inference to the jury that a verdict for Plaintiff will have no adverse effect on Defendants' practice of medicine or his license to practice medicine. Filing 106 at 10. Defendants represent that they will not argue that there will be such an adverse effect, but even so, Plaintiffs should not be allowed to offer the challenged evidence. Filing 106 at 10. Defendants argue that such evidence improperly suggests to jurors that they can have a "clean conscience" if they find against a doctor. Filing 106 at 10. Thus, Defendants assert that Federal Rule of Evidence 403 bars such evidence. Filing 106 at 10. Plaintiffs represent that they do not intend to offer any such argument, although they reserve the

right to respond if Defendants do make sympathy-based arguments about professional consequences. Filing 115 at 37. Plaintiffs assert that this part of the Motion should be denied or, alternatively, that neither side should raise such a collateral issue. Filing 115 at 37.

The Court grants this part of Defendants' Motion only because the challenged evidence is of little probative value to issues properly before the jury and would be potentially more prejudicial than probative.

30. *Exclusion of Photographs or Videos Except for Imaging Studies in Mrs. Jensen's Medical Records*

Defendants argue that Plaintiffs never supplemented a response to a discovery request related to any photographs or videos that Plaintiffs intended to use at trial, but then on February 8, 2026, Plaintiffs provided an email containing several photographs that Plaintiffs intend to include on their exhibit list and offer at trial. Filing 106 at 10–11. Defendants contend that any such evidence should be excluded for failure to make timely disclosures and to prevent unfair surprise. Filing 106 at 11. Plaintiffs argue that the photographs have been disclosed and that Defendants have identified no prejudice. Filing 115 at 38. Plaintiffs contend that the photographs are "life photographs" reflecting Mrs. Jensen's relationship with her husband, so that they are relevant to the loss of consortium claim. Filing 115 at 38. Plaintiffs contend that exclusion pursuant to Federal Rule of Civil Procedure 37 would be a drastic remedy unwarranted in the circumstances. Filing 115 at 38. Plaintiffs also contend that the photographs will be used as demonstrative evidence but will not be sent back with the jury during deliberations. Filing 115 at 38.

The Court concludes that where Defendants received the photographs in question a full month before the start of trial, the likelihood of prejudice is low. Under these circumstances,

25

exclusion pursuant to Federal Rule of Civil Procedure 37 is unwarranted. Defendants may challenge individual photographs at trial if they have other grounds for doing so.

This part of Defendants' Motion is denied.

### 31. Prohibition of Non-Radiologists Opining on the Reasonableness of Dr. Nelson's Care of Mrs. Jensen

Defendants assert that non-radiologists lack foundation to opine on the standard of care for a radiologist, making their opinions inadmissible under Federal Rules of Evidence 401 and 402. Filing 106 at 11. Defendants point specifically to the testimony of Dr. Dorius, Mrs. Jensen's treating oncologist, about his "expectations" of what a radiologist might report or how a radiologist might practice as improperly speculative and not based on personal knowledge, contrary to Federal Rules of Evidence 601 and 601. Plaintiffs contend that this objection is overbroad and mischaracterizes anticipated testimony. Filing 115 at 39. They contend that a treating physician can properly testify about his treatment of Mrs. Jensen, the information he relied upon in doing so, his own review of imaging studies, the significance of findings (or the lack of findings) to treatment decisions, and his discussions with Plaintiffs about the MRI. Filing 115 at 39–40. Plaintiffs represent that they do not intend to ask Dr. Dorius to define the legal standard applicable to radiologists or that Dr. Nelson breached that standard. Filing 115 at 41.

The Court concludes that, while it would be improper for a non-radiologist to opine on the standard of care applicable to a radiologist, this is an instance in which the context and content of a non-radiologist's testimony at trial will determine its admissibility. The Court declines to make a blanket exclusion of testimony that might somehow exceed the doctor's area of expertise and will instead rule on any specific challenge at trial.

Thus, this part of Defendants' Motion is denied.

*32. Prohibition of Expert Testimony on Matters They Have Not Reviewed or Disclosed*

Defendants argue that such testimony lacks foundation, may be hearsay, and will result in unfair surprise. Filing 106 at 11. Plaintiffs assert that this part of Defendants' Motion is vague, overbroad, and unnecessary in light of Federal Rule of Civil Procedure 26. The Court concludes that this part of Defendants' Motion is another instance of improperly asking the Court to apply the law. *See Moua*, 2024 WL 1479166, at *1. Thus, this part of Defendants' Motion is denied.

*33. Exclusion of Expert Testimony on the Experts' Personal Practices or Habits*

Defendants assert that an expert may properly discuss the standard of care stated in Neb. Rev. Stat. § 44-2810 based upon the prevailing practice of reasonable physicians in the locality, but may not base the standard of care on the individual experts' own personal practices. Filing 106 at 11. Plaintiffs respond that this part of Defendants' Motion is overbroad and would improperly limit legitimate examination of expert witnesses. Filing 115 at 44. They contend that an expert's personal practice is relevant to credibility and consistency. Filing 115 at 44. They acknowledge that the legal standard is not established solely by personal practice, but that does not make personal practice inadmissible for impeachment or explanatory purposes. Filing 115 at 45.

In the case on which Defendants' rely, the Nebraska Supreme Court stated,

[A] doctor's "personal standard regarding information for a patient's consent is irrelevant." Under the professional theory, the standard of care in medical malpractice cases for informed consent is not determined by the doctor's personal or customary routine, but on the information doctors ordinarily supply to patients in similar circumstances and locations.

*Curran v. Buser*, 711 N.W.2d 562, 570 (Neb. 2006) (quoting *Eccleston v. Chait*, 492 N.W.2d 860, 865 (Neb. 1992)). However, the Nebraska Supreme Court stated that it did not wish to discourage doctors from providing a patient with more information than the law required for informed consent,

which was at issue in that case. *Id.* at 571. Thus, this decision does not bar all reference to a physician's personal practice. The Court concludes that the proper remedies from the Court are to entertain timely objections if the testimony crosses the line into offering an alternative standard of care and instructing the jurors on the proper standard. Moreover, nothing prevents Defendants from engaging in cross-examination to clarify the differences between personal practice and an opinion about the community standard.

This part of Defendants' Motion is denied.

### 34. *Prohibition of Written Statements of Expert Opinions Rather than Testimony*

Defendants assert that medical and causation opinions of experts must be presented in authenticated testimony, based on sufficient foundation, and subject to cross-examination during trial. Filing 106 at 12. Defendants point out that expert reports are hearsay. Filing 106 at 12. Plaintiffs represent that they do not intend to offer experts' reports, but that experts may refer to their reports while testifying. Filing 115 at 46. Thus, Plaintiffs contend that this part of Defendants' Motion is unnecessary and any relief should be limited to exclusion of reports as substantive evidence. Filing 115 at 46.

Settled law excludes expert reports as evidence at trial. There does not appear to be any reasonable basis to believe that any standard of care evidence will not be in the form of testimony at trial. This part of Defendants' Motion is denied.

### 35. *Prohibition of Arguments that Experts' Standard of Care Testimony Is Irrelevant or that the Jury Can Decide that the Standard of Care Was Breached Regardless of the Evidence.*

Defendants argue that a verdict must be supported by expert opinions and to suggest otherwise is an improper appeal to jury nullification of the law. Filing 106 at 12. Plaintiffs assert that Defendants are attempting to restrict their ability to challenge the credibility, logic, or

reliability of defense expert testimony. Filing 115 at 46. Plaintiffs argue that the jury is entitled to decide which experts to believe. Filing 115 at 47.

The Court finds that this part of Defendants' Motion is based on speculation that Plaintiffs may improperly assert a jury nullification argument rather than engaging in proper impeachment of opposing experts. This part of Defendants' Motion is denied on this ground. Defendants may challenge arguments that Defendants believe are inappropriate when and if they arise.

36. *Prohibition of Treating Healthcare Providers Giving Opinion Testimony*

Defendants point out that Plaintiffs have not identified any treating-physician witness as an expert who would testify that any treatment of Mrs. Jensen breached the standard of care for a radiologist. Filing 106 at 12. Plaintiffs counter that treating physicians may state opinions without a report when the opinions are based on personal knowledge acquired during treatment, formed during diagnosis and care, and were not generated for litigation purposes. Filing 115 at 48. To the extent this part of Defendants' Motion is aimed at Dr. Dorius's testimony, Plaintiffs assert that his testimony has been fully disclosed and explored during depositions. Filing 115 at 48–49.

This part of Defendants' Motion is denied as overbroad, as it would preclude properly based statements of treating physicians' opinions under Federal Rule of Evidence 702. Defendants may challenge treating-physician opinions at trial if Defendants believe that the testimony does not satisfy the legal requirements for such opinions by a treating physician. As to Dr. Dorius's testimony, Defendants cannot claim surprise.

37. *Prohibition of Quoting Hearsay Opinions, Diagnoses, or Statements from Medical Records Not in Evidence*

Defendants argue that such testimony would be an impermissible conduit to introduction of inadmissible hearsay in violation of Federal Rules of Evidence 801 and 802. Filing 106 at 13.

29

Plaintiffs assert that this part of Defendants' Motion misstates the scope of permissible expert testimony under the Federal Rules of Evidence. Filing 115 at 50. They point out that experts may rely on otherwise inadmissible evidence and may explain the basis for their opinions. Filing 115 at 50. Plaintiffs argue that experts may properly refer to or quote from medical records admitted into evidence. Filing 115 at 50.

This part of Defendants' Motion will be denied. It is overbroad and more importantly premature, as there is no evidence that experts will improperly use their testimony as a "conduit" for hearsay rather than to explain the bases for their opinions.

### C. Plaintiffs' Motions in Limine

As mentioned above, Plaintiffs' Motions in Limine seek exclusion of 14 categories of evidence. Filing 107. The Court will consider these categories in turn.

#### 1. Exclusion of Evidence of Rulings on Motion in Limine

Plaintiffs offer no argument in support of exclusion of this category of evidence. Filing 107 at 2. Defendants do not object, provided the prohibition is mutual. Filing 116 at 2. This part of Plaintiffs' Motions in Limine is granted.

#### 2. Exclusion of Evidence of Medical Insurance

Plaintiffs assert that such evidence is irrelevant and potentially unfairly prejudicial under the Federal Rules of Evidence. Filing 107 at 2. Defendants do not object to this part of Plaintiffs' Motions in Limine. Filing 116 at 2. The Court granted the comparable part of Defendants' Motion in Limine in § II.B.1. above. This part of Plaintiffs' Motions in Limine is granted.

#### 3. Prohibition of Statements that Dr. Kligerman Is Not a Breast MRI Specialist

Plaintiffs assert that the Court has already considered and rejected the argument that Dr. Kligerman's testimony irrelevant because he is not a breast MRI specialist as a "red herring,"

reasoning that the case concerns the failure to identify and report an abnormal enhancing lesion in the sternum not the interpretation of breast tissue. Filing 107 at 2. Defendants assert that a blanket prohibition would preclude legitimate questions about credibility, qualification, or reliability of Dr. Kligerman's opinions. Filing 116 at 2. Defendants assert that the Court ruled on Dr. Kligerman's qualifications, not the credibility of his opinions. Filing 116 at 2–3. In reply, Plaintiffs assert that Defendants' response shows why the references must be prohibited. Filing 119 at 2. They argue that Defendants are attempting to relitigate the Court's prior ruling under the guise of a credibility challenge. Filing 119 at 3. They assert that Defendants should not be allowed to cross-examine Dr. Kligerman on irrelevant matters. Filing 119 at 3.

The Court stated in a prior ruling, "The Court concludes that Dr. Nelson's and RCI's argument that Dr. Kligerman is not qualified because he does not read breast MRIs is a red herring" on the basis that "[t]he question in this case is not whether Dr. Nelson misread a breast MRI, but whether Dr. Nelson should have seen and reported the sternal mass shown in the 2021 MRI." Filing 102 at 17. The Court concludes that for the same reason attacking the "credibility" of Dr. Kligerman's opinions on the basis that he is not a breast MRI specialist is improper—*i.e.*, irrelevant and potentially more confusing and misleading than probative. Fed. R. Evid. 401, 402, 403.

This part of Plaintiffs' Motions in Limine is granted.

4. *Prohibition of Arguments that Dr. Nelson Should be Excused from Liability because He Is "Human"*

Plaintiffs ask the Court to "prohibit[ ] Defendants, their counsel, and their witnesses from arguing or suggesting to the jury that Defendant Nick L. Nelson, M.D. should be excused from liability because he is 'human,' because 'humans make mistakes,' or because errors are an

unavoidable part of medical practice." Filing 107 at 3. Plaintiffs assert that such an argument would invite the jury to disregard the proper legal standard of care, is irrelevant, and is misleading and unfairly prejudicial. Filing 107 at 3. Defendants respond that it is "unclear" what Plaintiffs are requesting in this part of their Motions, but Defendants agree that all parties should abide by the Federal Rule of Evidence. Filing 116 at 3. In reply, Plaintiffs assert that enforcement of the rules and exclusion of improper evidence or argument is "precisely" the relief they seek. Filing 119 at 5.

This part of Plaintiffs' Motions in Limine is based on speculation with no evidentiary basis that Defendants will attempt to make any such argument. Moreover, Plaintiffs' reply makes clear that this part of their Motions is simply a request that the Court apply the law. *See Moua*, 2024 WL 1479166, at *1. Consequently, this part of Plaintiffs' Motions is denied. Until and unless Plaintiffs object to what they believe is such an improper argument, the Court cannot determine whether the argument is or is not appropriate.

5. *Prohibition of Arguments that Plaintiffs' Claims Are Based on Hindsight*

Plaintiffs seek to prohibit "Defendants, their counsel, and their witnesses from arguing or suggesting to the jury that Plaintiffs' claims are based on 'hindsight,' '20/20 hindsight,' or similar rhetoric that improperly implies liability is sought merely because a bad outcome occurred or because the abnormality is now known." Filing 107 at 3. Plaintiffs assert that such statements misstate the standard of care and risk misleading the jury. Filing 107 at 3. Defendants contend that this part of Plaintiffs' Motions is overbroad, as "hindsight" may be relevant to aspects of the case. Filing 116 at 3. However, they agree that they will refrain from arguing or suggesting that "hindsight" is the basis for Plaintiffs' claims. Filing 116 at 3. In reply, Plaintiffs argue that Defendants' concession "confirms" the need for the prohibition. Filing 119 at 5. They argue that

repeated characterization of their claims as "hindsight" risks misleading the jury. Filing 119 at 5. They assert that they are only attempting to prevent argumentative rhetoric that Plaintiffs' claims are legally defective because they are evaluated after the fact. Filing 119 at 5. They assert that a narrowly tailored ruling would eliminate Rule 403 concerns.

This part of Plaintiffs Motions is another example of a solution in search of a problem. Defendants have they agreed that they will refrain from arguing or suggesting that "hindsight" is the basis for Plaintiffs' claims. Filing 116 at 3. Plaintiffs cite no evidence plausibly suggesting that Defendants have or ever had any intention of improperly suggesting that "hindsight" is the basis for Plaintiffs' claims. The Court will not impose a blanket prohibition based on speculation.

This part of Plaintiffs' Motions is denied.

6. *Prohibition of Arguments Based on "Sympathy"*

Plaintiffs seek a prohibition of arguments based on "[s]ympathy and/or impact this litigation has on Defendants; impact this litigation has on society; generalities of lawsuits; cost of insurance; tort reform; too many lawsuits; anyone can file a lawsuit; we need to defend ourselves from frivolous lawsuits; etc." Filing 107 at 3. Plaintiffs argue that any such statements are intended to elicit sympathy from the jury, so that they are irrelevant and potentially more prejudicial than probative, as they may confuse the issues or mislead the jury. Filing 107 at 4. Defendants assert that "sympathy" is a matter raised in the relevant model jury instructions in relation to damages, so that Plaintiffs' request is overbroad. Filing 116 at 3. In reply, Plaintiffs argue that the Court can clarify the issue of proper consideration of "sympathy" in the jury instructions. Filing 119 at 6.

Whether references to "sympathy" are proper or improper depends on context, as the parties acknowledge in relations to damages instructions. Until and unless Defendants assert an

argument that improperly seeks a decision on the basis of sympathy rather than evidence in the case, a blanket Prohibition of certain words is unnecessary.

This part of Plaintiffs' Motions is denied.

### 7. *Exclusion of Speculative Opinions*

Plaintiffs seek exclusion of speculative opinions not held to a reasonable degree of medical certainty and not disclosed prior to trial via discovery. Filing 107 at 4. Plaintiffs contend that such opinions would violate the Federal Rules of Civil Procedure governing discovery, would be irrelevant, and potentially more prejudicial than probative. Filing 107 at 4. Defendants do not object to this part of Plaintiffs' Motions provided the prohibition is mutual. Filing 116 at 3.

This part of Plaintiffs' Motions is denied not because Defendants do not object, but because it is another instance of a request that the Court apply the law. *See Moua*, 2024 WL 1479166, at *1.

### 8. *Prohibition of Arguments of Adverse Effects of the Verdict*

Next, Plaintiffs seek a prohibition of arguments that a jury verdict for Plaintiffs will have any adverse effect on any Defendants' practice of medicine or license to practice medicine. Filing 107 at 4. Defendants do not object to this part of Plaintiffs' Motions as long as the prohibition is mutual. Filing 116 at 3. Indeed, Defendants sought to exclude any such argument as their twenty-ninth category of evidence. Filing 106 at 10.

This part of Plaintiffs' Motion is granted.

### 9. *Prohibition of Arguments that Plaintiffs' Attorneys Specialize in Suing Hospitals or Other Healthcare Providers*

Plaintiffs argue that this prohibition should extend to Plaintiffs' attorneys' offices outside of Nebraska. Filing 107 at 4. This category of evidence is the obverse of Defendants' category

34

twenty. Filing 106 at 108. Not surprisingly, then, Defendants do not object to this part of Plaintiffs' Motions provided the prohibition is mutual. Filing 116 at 3. However, this part of Plaintiffs' Motions, like the similar part of Defendants' Motion, simply requests that the Court apply the law prohibiting such ad hominem attacks on counsel. *See Moua*, 2024 WL 1479166, at *1. This part of Plaintiffs' Motions is denied.

### 10. Prohibition of References to a "Medical Malpractice Crisis"

Plaintiffs seek exclusion of references to a verdict for plaintiffs having a "malpractice crises" effect on the healthcare profession or any Defendant's practice. Filing 107 at 5. Defendants do not object to this part of Plaintiffs' Motions. Filing 119 at 6. This part of Plaintiffs' Motions is granted.

### 11. Prohibition of Evidence that any Defendant is "Sorry"

Plaintiffs ask the Court to prohibit "any counsel for Defendants from asking any questions of any Defendant, and from permitting any Defendant to testify, to anything about how 'sorry' such Defendant is about the fact that Ms. Jensen has sustained injuries." Filing 107 at 5. Plaintiffs argue that the state of mind or personal feelings of any Defendant are irrelevant. Filing 107 at 5. Defendants agree to this part of Plaintiffs' Motions, provided a similar prohibition is levied on Plaintiffs' appealing to the jury's sympathy or suggesting that Defendants are "unsympathetic" or "monsters." Filing 116 at 4. In reply, Plaintiffs agree that a mutual prohibition on appeals to sympathy and state that they do not intend to engage in inflammatory rhetoric. Filing 119 at 6.

The Court concludes that any prohibitions on such inflammatory rhetoric, ad hominem attacks, or appeals to sympathy is unnecessary, because it is barred by rules of professional conduct. This part of Plaintiffs' Motions is denied, but no one should imagine the denial is a license to engage in such unprofessional conduct.

*12. Prohibition of "Speculation"*

Plaintiffs argue that neither lay witnesses nor expert witnesses should be allowed to speculate. Filing 107 at 5. Plaintiffs argue that such speculation would be irrelevant and potentially more prejudicial than probative. Filing 107 at 5. Defendants assert that it is "unclear" what Plaintiffs are requesting, but Defendants agree that both parties should abide by the Federal Rule of Evidence. Filing 116 at 4.

Although the parties agree that such speculation is inappropriate, this part of Plaintiffs' Motions simply requests that the Court apply the law barring speculation and requiring evidentiary support. *See Moua*, 2024 WL 1479166, at *1. This part of Plaintiffs' Motions is denied.

*13. Prohibition on References to "Intent"*

Plaintiffs argue that this is not a criminal case, so that no references to whether Defendants had any intent to cause damage (or did not intend to harm Mrs. Jensen) should be excluded. Filing 107 at 5. Defendants do not object to this part of Plaintiffs' Motions. Filing 116 at 4. This part of Plaintiffs' Motions is granted, because such references would be irrelevant and likely to cause confusion about the issues in the case.

*14. Exclusion of Evidence that Dr. Nelson Has "Retired"*

Plaintiffs argue that such evidence is irrelevant, misleading, and would invite consideration of collateral matters. Filing 107 at 5. Defendants do not object, provided the prohibition or exclusion is mutual. Filing 116 at 4. This part of Plaintiffs' Motions is granted.

## D.  An Additional Issue

The Court just received Plaintiffs' Motion in Limine re: Deposition Testimony of Defendant Nick L. Nelson, M.D. Filing 126. Dr. Nelson is a witness listed on the witness list. Filing 108 at 6. The Court will not allow any deposition testimony to be submitted to the jury for

a witness who will be a live witness at trial. In order to present deposition testimony of a witness who is within the court's subpoena power and is on the witness list, the party seeking the testimony will need to either get agreement from the opposing party to offer the deposition instead of live testimony or show unavailability of the witness.

Plaintiff is ordered to communicate to the Court within 24 hours whether this witness will testify live or if the only testimony will be via deposition.

Also, in light of some of the issues raised in the Motions in Limine, the parties are directed to exchange any visual aids they intend to use during opening statements not later than 12:00 p.m. on Thursday, March 5, 2026, to confer, and to attempt to reach agreement on such visual aids. If the parties are unable reach agreement, the Court will address any disputes at a later final pretrial conference.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.      Defendants' Pretrial Motion in Limine, Filing 106, is granted in part and denied in part as set out above; and

2.      Plaintiffs' Motions in Limine, Filing 107, is granted in part and denied in part as set out above.

Dated this 3rd day of March, 2026.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

37